# City of Paducah v. Vinson.

April 18, 1939.

Joe L. Price, Judge.

W. V. EATON for appellant.

McMURRY, KATTERJOHN & REED for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

The appellant, City of Paducah, Kentucky, a municipal corporation of the second class, is appealing from a judgment on a verdict awarding the appellee, May Vinson, the sum of $1000 as damages for injuries received by her in a fall on a brick sidewalk in Paducah. The principal grounds urged for reversal are (1) the verdict and judgment are not sustained by sufficient evidence and are flagrantly against the weight of the evi-

dence; (2) the trial court. erred in admitting incompetent evidence; (3) the trial court erred in failing to give certain instructions offered by the appellant, and also in the giving of certain instructions; and (4) there was a variance between the allegations of the petition and the proof.

The accident in which the appellee received her injuries occurred on October 21, 1936, at approximately 7 P. M. She had gone from her home to a grocery store a short distance therefrom and was returning when she fell. The point where the accident took place was only a short distance from the store. The appellee stepped on a loose brick and fell into a place in the sidewalk where there were no bricks. Her right knee was bruised and severely wrenched, and she received other injuries, including bruises, a sprained wrist and an injured cheek bone. There is some evidence that the injury to her knee is permanent. May Vinson was approximately 50 years of age at the time of the accident. She testified that she had worked at house cleaning before she was injured, but that she could no longer do that kind of work. She was confined to her home for a short time, and it was necessary for her to use crutches for a period of several weeks, according to her testimony.

According to the testimony of the superintendent of streets of the City of Paducah, the sidewalk along Third Street, the street on which the accident took place, had had rough places in it for several years. He testified that in the latter part of 1933, or the first part of 1934, the sidewalk had been repaired. As to the nature of the repairs made, he testified:

"Q. What did the repairs consist of? A. Leveling up the brick and making them smooth as we could.

"Q. Was there any part of the sidewalk not covered with brick? A. Along at that particular place where there was not enough brick to make it the full width they put them back from the curb and left a grass plot.

"Q. What part in there did you fill up level with the brick? A. The balance of this space.

"Q. Was that filled up even with the brick? A. Yes, sir."

The bricks were laid in sand and became loose from

time to time at the place where the appellee fell. It seems also that children occasionally removed the bricks from the sidewalk. The owner of the store near the place of the accident testified that he had put the bricks back in the sidewalk on a number of occasions. There is testimony also that there had been a bad place in the sidewalk at the place where the accident occurred for several years.

We can find no basis for appellant's first contention, namely, that the verdict and judgment are not sustained by sufficient evidence, and are flagrantly against the weight of the evidence, from our examination of the record. The place in the sidewalk where appellee received her fall was in a dangerous condition and constituted a menace to pedestrians. The appellee received a painful and possibly a permanent injury to her right knee, in addition to other injuries. It is our view, therefore, that there was sufficient evidence to sustain the verdict. Furthermore, it does not appear to us that the verdict is flagrantly against the weight of the evidence. Some question was raised also by the appellant as to the amount of the damages awarded. Under the circumstances in this case we are not prepared to say that the damages awarded are excessive. City of Cynthiana v. Sersion, 261 Ky. 667, 88 S. W. (2d) 672.

The evidence complained of as being incompetent was given by witnesses who testified that they had seen policemen passing by the place where the accident occurred. Some of the witnesses testified that they had seen policemen walk by the place, while others testified that they had seen them pass by in cars. This evidence was introduced with the view of charging the city with notice of the defective condition of the sidewalk at the place where May Vinson fell. We do not think that this evidence was prejudicial to the appellant's substantial rights, granting for the sake of argument that it was incompetent. We think that the testimony of the superintendent of city streets shows clearly and conclusively that the city had notice through him of the faulty condition of the old brick sidewalk on Third Street at the place where the accident occurred, as evidenced by the foregoing quotation from his testimony. In substance, he testified that the sidewalk had been repaired and made as smooth as could be done, and that at the place where the accident occurred a grass plot had been

left in the sidewalk because there were not enough bricks to cover its full width. It was near this space where May Vinson stepped on a loose brick which caused her to fall into it. At most the repairs made in the sidewalk were of a temporary nature. While it may be said that the superintendent of streets did not know of the exact condition of the faulty place in the sidewalk when May Vinson fell, it is obvious to us that he knew that the sidewalk was of such construction and had been so repaired that it might become unsafe and dangerous at any time. In other words, the sidewalk was not maintained in a reasonably safe and proper state of repair. As indicated, the street superintendent knew the general condition of the sidewalk, the nature of the repairs that had been made, which in no sense could be regarded as permanent, and he had every reason to believe that the sidewalk would not remain in the condition in which it was left at the time the repairs were made, granting that it was put in a reasonably safe condition of repair at that time. However, the fact that bricks were left out of a rather large place in the sidewalk when the repairs were made is of itself adequate to show that the sidewalk was not put in a permanent and satisfactory condition of repair.

The complaint as to the instructions given by the trial court is directed particularly to the sixth one. This instruction is as follows:

"Knowledge of a condition may reasonably be inferred, if the condition has existed a sufficiently long time for the opportunity for knowledge to have arisen by the exercise of the ordinary care which the law imposes upon the defendant."

It has just been pointed out that we are of the opinion that the testimony of the superintendent of city streets taken alone shows conclusively that the city through him had knowledge of the condition of the sidewalk at the place where the accident occurred. On the whole the instructions do not appear to us to be prejudicial to the appellant's substantial rights. As pointed out by counsel for the appellee, the instruction on contributory negligence gave the jury the right to find for the appellant if its members believed that the appellee did not exercise ordinary care for her own safety.

Counsel for the appellant vigorously contends that there was a variance between the allegations of the pe-

tition and the proof. It is contended that the petition alleged that the appellee stepped in a hole in the sidewalk, whereas she testified that she stepped on a loose brick which caused her to fall into the hole. The hole referred to is the place where there were no bricks. The petition alleged that the city had neglected and failed to keep the sidewalk in good repair at the place where the accident occurred, and that there was a large, dangerous and unprotected hole in it. It also alleged that the injuries and damages resulting to the appellee were caused by the gross negligence of the city in failing to keep the sidewalk in proper, safe and good repair, and that by reason of the condition described "she was caused to and did fall and was precipitated to the hard stones and bricks and pavement of said sidewalk." We have examined the pleadings and the proof carefully, with the view of determining whether there is a material variance between the allegations of the petition and the proof. We fail to find such a variance. In substance it was alleged that the sidewalk was in an unsafe condition, that there was a hole in it, and that by reason of the unsafe condition the appellee was caused to fall into the hole. We have seen that the sidewalk was in an unsafe condition; that there was a place in it where there were no bricks; and that the appellee did fall into this place. She testified that she stepped on a loose brick which caused her to fall. We think that it is apparent that the parties to this action thoroughly understood the conditions which constituted the dispute, and no amendment or alteration of the pleadings was necessary to prevent the city from being misled, or to perfect the issues involved on the trial. W. T. Turner & Son v. Halsted, 236 Ky. 322, 33 S. W. (2d) 17.

Judgment affirmed.